## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

EDRES MONTGOMERY,

      *Petitioner*,

*v.*

UNITED STATES OF AMERICA,

      *Respondent*.

_____/

CRIMINAL CASE NO. 04-CR-20046-06
CIVIL CASE NO. 11-CV-10382

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
## TO VACATE, SET ASIDE, OR CORRECT SENTENCE
(Doc. 288)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED**.

## II.    REPORT

### A.    Introduction

Pending, pursuant to an order of reference from United States District Judge Thomas L. Ludington (Doc. 290), is the above-entitled motion filed pursuant to 28 U.S.C. § 2255 to vacate Petitioner Edres Montgomery's federal custodial sentence. Respondent submitted a response (Doc. 296) and Petitioner Montgomery (hereafter "Montgomery") filed a reply. (Doc. 300.) Therefore, I conclude that, pursuant to E.D. Mich. LR 7.1(f)(2), this motion is ready for Report and Recommendation without oral argument.

### B.      Background and Parties' Arguments

Montgomery was charged in five counts of a ten-count Second Superseding Indictment with:  conspiracy to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) and (iii) (alleging Montgomery cooked or arranged for others to cook cocaine) (Count 1); distribution of five grams or more of a substance containing cocaine base on January 15, 2004, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2 (Count 4); distribution of 50 grams or more of a substance containing cocaine base on January 21, 2004, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii) and 18 U.S.C. § 2 (Count 5); distribution of five grams or more of a substance containing cocaine base on March 4, 2004, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. §2 (Count 7); and distribution of five grams or more of a substance containing cocaine base on March 22, 2004, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. §2 (Count 8). (Doc. 74.)

A jury trial was held from September 25, 2007, to October 3, 2007, and on October 4, 2007, Montgomery was found guilty on Counts 1 and 8, and not guilty on Counts 4, 5, and 7. (Doc. 190.)[1] Montgomery appeared for sentencing on March 5, 2008, and judgment entered on March 25, 2008, committing Montgomery to the Bureau of Prisons for his natural life on each of the two counts, to be served concurrently. (Doc. 238.)[2] Montgomery filed a Notice of Appeal on March 6, 2008 (Doc. 227), and the Sixth Circuit issued an opinion denying Montgomery's appeal and

---

[1]Montgomery was also charged in a separate indictment (case no. 06-20544) with 2 counts of witness tampering and he was found guilty of those two counts by the same jury.

[2]Montgomery was also sentenced to 120 months on the two counts of witness tampering and all sentences were to be served concurrently.

affirming the judgment of the district court on December 18, 2009. *United States v.Montgomery*, 358 Fed. App'x 622 (6th Cir. 2009).

Montgomery raised the following issues in that appeal: (1) admissibility of co-conspirator's statements; (2) denial of Montgomery's motion to dismiss Count I (conspiracy) of the Second Superceding Indictment; (3) consolidation of the drug and witness tampering indictments; (4) denial of relief under Rule 29 and 33 (sufficiency of the evidence and whether the verdict was against the manifest weight of the evidence); (5) motion for mistrial based on prosecutorial misconduct; and (6) cruel and unusual punishment based on the statutorily mandated life sentence. Montgomery's petition for writ of certiorari was denied by the United States Supreme Court on August 19, 2010. *Montgomery v. United States*, ___ U.S. ___, 130 S. Ct. 2122, 176 L. Ed. 2d 746 (2010).

Montgomery raises twelve grounds for relief in his 2255 motion: (1) trial counsel was ineffective for failing to "challenge the jury pool/array under the Sixth Amendment;" (2) trial counsel was ineffective for failing "to procure the PSR's [sic] of Margarito Casas, Lee Weidky, Luna and James Edwards, for impeachment purpose;" (3) trial counsel was ineffective for failing to "move the court for a 'buyer seller' jury instruction;" (4) trial counsel was ineffective for failing "to seek a guilty plea as expressly instructed to do;" (5) trial counsel was ineffective for "failing to file a motion to dismiss the indictment as a result of the Sixth Amendment Speedy Trial violation;" (6) appellate counsel was ineffective for "failing to raise the *Bloate* issue on appeal;" (7) trial counsel was ineffective for "failing to object to the court inadvertently vouching for the credibility of the witnesses in the jury instructions;" (8) trial counsel was ineffective for "failing to object to my prior convictions not being alleged in my indictment in light of *Shepard v. United States*;" (9) trial counsel was ineffective "for failing to follow my express instructions to interview

3

and call Mr. Crittendon;" (10) trial counsel was ineffective "for failing to object to the § 851(a) information because the prior convictions it relied upon were not part of the conspiracy, and for his failure to object to the court failing to follow the appropriate procedure of § 851(b);" (11) trial counsel was ineffective "for failing to object to the court's erroneous jury instructions;" and (12) "petitioner seeks relief as to the new crack law." (Doc. 288.) Montgomery also requests an evidentiary hearing. (Doc. 288 at 13, 42.)

The government responds[3] that: (1) Montgomery has failed to present any evidence regarding the composition of the jury pool nor has he shown that a jury pool with a different composition would have reached a different result, i.e. he has not shown any actual prejudice; (2) presentence reports (PSRs) of third parties are not discoverable absent a showing of compelling need that Montgomery has not made and Montgomery's trial counsel sought discovery of the PSRs but the motion was denied (Doc. 154); (3) the buyer-seller defense was presented to the jury and Montgomery has not shown how the failure to request the jury instruction prejudiced him; (4) Montgomery received and rejected multiple plea offers that would have resulted in him receiving a sentence less than the life sentence he is serving; (5-6) Montgomery has not shown that he made a timely assertion of his speedy trial rights or that any delay resulted in actual prejudice to him, nor has he shown that the government sought to delay trial to gain any advantage; (7) the jury instructions as a whole, including the portion regarding the special consideration given to the testimony of former co-conspirators, was an accurate statement of the law and the special instruction likely benefitted rather than harmed Montgomery in that it highlighted the motivation the witness might have to testify falsely; (8) Montgomery's claims are contradictory and it is difficult to believe that he wanted his prior drug convictions stated in the indictment and presented

_____

[3]The government did not respond directly to every argument made by Montgomery.

to the jury; had counsel done so, he might have been ineffective but he did not and was not; (9) defense counsel's letter adequately explains why he did not call witness Crittendon; and (10-11) the government is permitted to "charge in the conjunctive and prove in the disjunctive." (Doc. 296 at 7.)

## C.      Governing Law

In order to prevail on a motion brought under 42 U.S.C. § 2255, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A section 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation or actual innocence. *Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994); *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1981). A post-conviction motion under section 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears

a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

**D.      Analysis**

**1.      Sixth Amendment Right to a Jury Representing a Fair Cross Section of the Community** (Ground 1)

Montgomery contends that his trial counsel was ineffective for failing to challenge the jury pool because, "[o]ut of the 60 jurors summon[ed] for jury trial not a single one of them were (Asiatic) Black, thus it is evident that a 'fair representation' in the jury array of Black People were underrepresented in the jury process in violation of Petitioner's Sixth Amendment rights." (Doc. 288 at 16-17.)

In order to establish a prima facie violation of the Sixth Amendment's right to a jury representing a fair cross section of the community, a petitioner must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community [cognizable prong]; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community [underrepresentation prong]; and (3) that underrepresentation is due to systematic exclusion of the group in the jury-selection process [systematic exclusion prong]." *United States v. Ovalle*, 136 F.3d 1092, 1098 n.7 (6th Cir. 1998) (citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979)). Exclusion need not be intentional to be unconstitutional under the Sixth Amendment's fair cross-section guarantee, but the exclusion must be systematic. *Duren*, 439 U.S. at 368 n.26. Systematic means "inherent in the particular jury-selection process utilized." *Id.* at 366.

Although Petitioner argues that he was "biased by the fact that there were no Jurors of his race and of his educational background, let alone the community in which the Petitioner lived (Doc. 300 at 2), there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975). "Defendants are not entitled to a jury of any

particular composition, but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *United States v. Hill*, 146 F.3d 337, 343 (6th Cir. 1998). The Sixth Amendment therefore "guarantees the opportunity for a representative jury venire, not a representative venire itself." *United States v. Jackman*, 46 F.3d 1240, 1244 (2d Cir. 1995).

If a prima facie violation is established, the government is required to show that "a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group" in order to rebut the presumption. *Id*. at 367-68.

Montgomery has not made any specific allegations as to what practice "inherent in the particular jury-selection process utilized" systematically excluded African-Americans. Montgomery's allegation that there were no African-Americans in the pool of 60 jurors from which his petit jury was drawn is insufficient to establish systematic exclusion. *United States v. Riddle*, 691 F. Supp. 2d 737, 742 (E.D. Mich. 2010) (and cases cited therein). In *Riddle*, the court held that the defendant's improper focus on the 100 prospective jurors (and the 9 African-Americans therein) could not establish systematic exclusion. *Id.* The same holds true in the instant case. In addition, to the extent that Montgomery challenges the juror selection plan, the court in *Riddle* rejected an argument challenging the constitutionality of the current juror selection plan which was also utilized by the Eastern District of Michigan at the time of Petitioner's conviction. *Id., United States v. Bates,* No. 05-81027, 2009 WL 5033928, at *2 (E.D. Mich. Dec. 15, 2009). Accordingly, I suggest that Montgomery's counsel was not ineffective for failing to raise this issue that lacks merit. Therefore, I further suggest that this ground provides no support for Montgomery's motion to vacate his sentence.

**2.      Right to Presentence Reports of Codefendants** (Gound 2)

Montgomery contends that his trial counsel was ineffective for failing to "procure the PSR's [sic] of Margarito Casas, Lee Weidky, Luna and James Edwards, for impeachment purposes." (Doc. 288 at 22.) Montgomery explains that "either the Court erred by failing to rule on [defense counsel's] request for the PSR's [sic] or the government failed to fulfill its *Brady* & *Giglio* obligation." (Doc. 288 at 24-25.) As implied by Montgomery's statements, his trial counsel did file a motion seeking the PSRs of Montgomery's co-defendants, but that motion was denied. (Doc. 154, 187.) Counsel did all he could do to secure the PSRs. The court's failure to grant the request does not establish that counsel was ineffective. *Hodge v. Haeberlin*, 579 F.3d 627, 644 (6th Cir. 2009) ("Counsel does not fall below this [*Strickland*] standard by failing to prevail when arguing a debatable point to the court."). I therefore suggest that this ground does not provide a basis for relief under § 2255.

**3.      Jury Instruction Claims** (Grounds 3, 7, and 11)

Montgomery contends that counsel was ineffective for failing to "move the court for a 'buyer-seller' jury instruction." (Doc. 288 at 26-29.) A "buyer-seller instruction is unnecessary if the district judge has given a complete instruction reciting all the elements of conspiracy and requirements for membership in the conspiracy." *Riggs v. United States*, 209 F.3d 828, 833 (6th Cir. 2000).[4] *See also United States v. McMahan*, 129 Fed. App'x 924, 931 (6th Cir. 2005). Since the jury in the instant case was fully instructed on the elements of conspiracy and requirements for membership in the conspiracy, a buyer-seller instruction was not necessary. I therefore suggest that counsel could not have been ineffective for failing to ask for the instruction.

---

[4]This case has been called into doubt with respect to its Sixth Amendment conflict of interest analysis, but the jury instruction analysis remains good law. *See Kumar v. United States*, 163 Fed. App'x 361, 366 (6th Cir. 2006).

As to counsel's failure to object to the court allegedly and inadvertently vouching for the credibility of witnesses in the jury instructions, this claim is also without merit. Montgomery picks one paragraph out of the instructions regarding cooperating witnesses, but the entire sections reads as follows:

> Remember that you alone decide how much of the witness' testimony to believe and how much weight it deserves.
>
> You have heard the testimony of various cooperating witnesses. You have also heard that before this, they were convicted of various crimes. Those earlier convictions were brought to your attention only as one way of helping you decide how believable each witness' testimony was. Do not use that information for any other purpose, it is not evidence of anything else.
>
> Likewise, the fact that some cooperating witnesses have pled guilty to the conspiracy charge is not evidence that the defendant is guilty and cannot be considered against the defendant in any way.
>
> You have also heard that the cooperating witness received something from the government in exchange for their agreement to cooperate and to provide truthful testimony. For some witnesses, the government's promised to ask that their sentenced be reduced by the court for providing truthful testimony, and the court will decide in the future whether the sentences will be reduced. And if so, by how much.
>
> Another witness was paid by the government for making controlled buys and testifying truthfully. The use of witnesses who receive something in exchange for their cooperation is common and permissible, but you should consider the testimony of such witnesses with more caution than the testimony of other witnesses. Consider whether their testimony has been influenced by what they have received for testifying.
>
> Do not convict the defendant based on the unsupported testimony of such a witness standing alone unless you believe the witness' testimony beyond a reasonable doubt.

(Doc. at 16-17.) I suggest that when viewing the instruction as a whole, the court did not vouch for the credibility of cooperating witnesses. To the contrary, the court warned that the testimony of cooperating witnesses should be viewed with "more caution than the testimony of other witnesses" and that jurors should "[c]onsider whether their testimony has been influenced by what

they have received for testifying." *Id.* Since I suggest that there is nothing improper about these jury instructions, I further suggest that counsel was not ineffective for failing to object to them.

### 4.    **Failure to Seek Guilty Plea** (Ground 4)

Montgomery contends that counsel was ineffective for failing to "seek a guilty plea as expressly instructed to do so." (Doc. 288 at 29.) The record reveals that trial counsel actively pursued plea negotiations with the Assistant United States Attorney assigned to the case, but that an agreement could not be reached. (Doc. 296 at Ex. 2, 3, 4.) In addition, the affidavit of trial counsel indicates that Montgomery "was not interested in a plea bargain and that he [Montgomery] had problems with his prior counsel or counsels as they would be talking about plea bargains." (Doc. 296 at Ex. 5 ¶ 6.) I therefore suggest that this ground does not reveal any ineffective assistance of counsel, nor does it support Montgomery's motion to vacate sentence. *See Newman v. Vasbinder*, 259 Fed. App'x 851, 854 (6th Cir. 2008) (counsel was not ineffective where he explored possible plea negotiations and where client indicated plea offer was totally unacceptable and where this rejection caused defense counsel to erroneously believe that the client had foreclosed the idea of any plea agreement).

### 5.    **Speedy Trial Claims** (Grounds 5 and 6)

Montgomery contends that trial counsel was ineffective for failing to file a motion to dismiss the indictment based on a violation of the Sixth Amendment right[5] to a speedy trial as well as a violation of the Speedy Trial Act,[6] and that appellate counsel was also ineffective for failing to raise the speedy trial issue under *Bloate v. United States*, ___ U.S. ___, 130 S. Ct. 1345, 176 L. Ed. 2d 54 (2010). (Doc. 288 at 29-34.) Trial counsel indicates in his affidavit that he "did not see

---

[5]His fifth ground is labeled as a Sixth Amendment speedy trial issue. (Doc. 288 at 29.)

[6]The body of his motion alleges a Speedy Trial Act issue. (Doc. 288 at 30.)

an issue relating to a speedy trial as Defense Counsel was not the first attorney on the case; also there were several pre-trial motions filed that would have delayed any counting towards a speedy trial rule." (Doc. 296 at Ex. 5 ¶ 7.)

### a.     Speedy Trial Act

### i.     Speedy Trial Act Standards and Ineffective Assistance

Under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, "[i]n any case in which a not guilty plea is entered, the trial of a defendant charged in an information or indictment . . . shall commence within seventy days from the filing date . . . or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). If a superceding indictment is filed, "the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be." 18 U.S.C. § 3161(d)(1).

The statute lists the periods of delay that "shall be excluded in computing the time . . . within which the trial of any such offense must commence:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to – (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant; (B) delay resulting from trial with respect to other charges against the defendant; (C) delay resulting from an interlocutory appeal; (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; (E) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district . . . ; (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days . . . shall be presumed unreasonable; (G) delay resulting from consideration by the court of a proposed plea agreement to be entered into . . . ; and (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
>
> (2) Any period of delay during which prosecution is deferred by the attorney for the Government pursuant to written agreement with the defendant, with the approval of

the court, for the purpose of allowing the defendant to demonstrate his good conduct.

(3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness. (B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when . . .

(4) Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

(5) If the information or indictment is dismissed upon motion of the attorney for the Government . . .

(6) A reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted.

18 U.S.C. § 3161(h).

In addition to the time that is "automatically" excludable under subsection (h)(1), excludable time may also include delays due to the granting of continuances based on the court's findings that the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The statute expressly mandates that "[n]o such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The findings must be expressed and placed on the record at the time the continuance is granted, or at least by the time the court rules on a motion to dismiss under § 3161(a)(2). Since "[e]xcusing the failure to make these findings would be inconsistent with the strategy embodied in 18 U.S.C. § 3161(h) . . . when a district court makes no findings on the record in support of 18 U.S.C. § 3161(h)[7] continuance, harmless-error

analysis is not appropriate." *Zedner v. United States*, 547 U.S. 489, 509, 126 S. Ct. 1976, 164 l. Ed. 2d 749 (2006).

In addition, the statute mandates that no interests-of-justice continuance shall be granted for the following reasons: "general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C).

A petitioner may establish a prima facie case that the government has violated the Speedy Trial Act by showing that he was not brought to trial within the seventy-day period. *United States v. Gardner*, 488 F.3d 700, 717 (6th Cir. 2007). Once the prima facie case is established, the burden shifts to the government to show that, "after taking into account all the time excludable from the seventy-day period, the defendant was brought to trial during the statutorily mandated period." *Id.*

Excludable time for pretrial motions "includes all of the days during which the court is waiting to receive information necessary to decide a pending pretrial motion." *Gardner*, 488 F.3d at 717. If the motion requires a hearing, then the entire time between the filing of the motion through the date of the hearing is excludable. *Id.* In addition, the "day a pretrial motion is filed and the day the court disposes of it should be excluded from the Speedy Trial period." *United States v. Tinklenberg*, 579 F.3d 589, 594 (6th Cir. 2010), *aff'd*, ___ S. Ct. ___, 2011 WL 2039366 (May 26, 2011). However, time spent on "mundane" pretrial motions for which a hearing is not held and which do not delay trial is not excludable. *Tinklenberg*, 579 F.3d at 599-600. Regardless of whether a hearing is held or not, after the court receives all the information necessary to decide a motion, a maximum of thirty days can be excluded on the theory that the court has taken the matter under advisement. *Gardner*, 488 F.3d at 717-718.

In *Bloate*, the United States Supreme Court held that "time granted by the District Court for pretrial motion preparation is not automatically excludable under subsection (h)(1)" of the Speedy Trial Act. *Bloate*, 30 S. Ct. at 1358. Instead, the preparation time may be excludable only if the district court makes the findings required by § 3161(h)(7) that the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."[7]

When dealing with multiple defendants, the "general rule [that] excludable delay of one codefendant is excludable delay for all codefendants, applies equally to earlier and later arraigned codefendants." *United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009) (citing *Coviello v. United States*, 287 Fed. App'x 503, 507 (6th Cir. 2008) (holding that the speedy-trial clock started when the last codefendant joined for trial was arraigned)).

Where the Speedy Trial Act violation issue falls under the rubric of an assertion that counsel was ineffective for failing to raise the issue, *Strickland* requires that a defendant must show that "but for trial counsels' failure to raise the statutory speedy trial issue, the result of the proceeding

---

[7]The factors to be considered in determining whether to grant a continuance are:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice;

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section;

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex; and

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or complex as to fall within clause (ii), would deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

would have been different." *United States v. Jackson,* 22 Fed. App'x 396, 398 (6th Cir. 2001). In order for the outcome to have been different, a defendant must show a reasonable probability that the case would have been dismissed with prejudice. *Id.* When determining whether to dismiss an indictment with or without prejudice after a Speedy Trial Act violation has been shown, courts are to consider the following factors: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of this chapter and on the administration of justice. 18 U.S.C. § 3162(a).

### ii.    Determination of Excludable Days

In the instant case, on November 3, 2005, there is a docket notation indicating that an excludable delay had begun because the court was "awaiting arraignment of all co-defendants on 2nd Superseding Indictment." Montgomery was arraigned on the Second Superseding Indictment (Doc. 74) on October 21, 2005. However, the last co-defendants to be arraigned, Margarito Casas and James Edwards, were arraigned on November 10, 2005. Therefore, pursuant to *Sobh*, 571 F.3d at 603, the speedy trial clock started on November 10, 2005.

On November 18, 2005, the court found that the ends of justice served by a continuance outweighed the best interests of the public and the defendants in a speedy trial and ordered that the time period between November 17, 2005, and January 17, 2006, be excluded for the purpose of computing time limits under the Speedy Trial Act. (Doc. 87 at 4.)[8]

On January 13, 2006, Montgomery filed a motion for the court to determine a location for him to view discovery material (Doc. 94) and the court denied the motion on February 9, 2006,

---

[8]The order indicated that the continuance was based on defense counsel's "difficulty setting up a meeting with his incarcerated client in order to review discovery material" such that "defense counsel asked that an additional 60 days be allowed to make these arrangements and then to prepare pre-trial motions." (Doc. 87 at 4.) "Government counsel did not oppose the request, and all counsel agreed that this time should be deemed an 'ends- of- justice' excludable delay for purposes of the Speedy Trial Act." (*Id.*)

without holding a hearing. (Doc. 105.) Therefore, January 13, 2006, and February 9, 2006, were excludable. *Tinklenberg*, 579 F.3d at 594. In addition, since the court was "waiting to receive information necessary to decide [the] pending pretrial motion" from the filing date, January 13, 2006,  until the response was filed on January 27, 2006 (Doc. 99),[9] those days were also excludable. *Gardner*, 488 F.3d at 717.

On May 22, 2006, the court granted defense counsel Robert Rhead's motion to withdraw as counsel. (Doc. 116.)[10] After being appointed, on May 26, 2005, Stevens Jacobs filed an appearance for Montgomery. (Doc. 119.)

On June 1, 2006, an order extending deadlines upon request of defense counsel was entered, noting that a motion to withdraw as counsel had been granted and new counsel had been appointed such that the ends of justice served by a continuance outweighed the best interest of the public and defendant in a speedy trial. (Doc. 120 at 1-2.) In addition, the order indicated that the parties had stipulated to the ends of justice findings. (Doc. 120 at 2.) Accordingly, the time period from June 6, 2006, though August 22, 2006, was excluded. (Doc. 120 at 2.)

On August 2, 2006, Stevens Jacobs' motion to withdraw as defense counsel was granted. (Doc. 124.)[11] William Daniel was appointed as defense counsel on August 4, 2006. (Doc. 129.)

On August 4, 2006, an order extending deadlines upon request of defense counsel was entered which also concluded that the ends of justice served by a continuance outweighed the best interest of the public and the defendant in a speedy trial. (Doc. 130 at 1-2.) Therefore, the time period from August 1, 2006, to August 14, 2006, was excluded. I note that due to the order entered

---

[9]No reply was filed.

[10]The motion to withdraw was filed by Robert Rhead on May 15, 2006. (Doc. 111.)

[11]Counsel's motion to withdraw was filed on July 25, 2006. (Doc. 121.)

on June 1, 2006, which already excluded these days, this order has no practical effect on the speedy trial issue.

On August 30, 2006, an order extending deadlines based on the oral motion of defense counsel at a pretrial conference held on August 24, 2006, was entered. (Doc. 135.) The order also stated that since defense counsel needed more time to prepare for trial, the ends of justice served by a continuance outweighed the best interest of the public and defendant in a speedy trial. (Doc. 135 at 1.) The court then ordered that the time period from August 24, 2006, until October 5, 2006, was excluded for speedy trial purposes. (Doc. 135 at 2.)

On September 13, 2006, a stipulation and order was entered into by newly appointed defense counsel William Daniel, finding that the delay resulting from the stipulation serves the ends of justice and outweighs the interest of the public and the defendant in a speedier trial. (Doc. 136 at 2.) The court ordered that the time period from September 11, 2006, to September 25, 2006, be excluded. (Doc. 136 at 3.) Since the time excluded fell within the time previously excluded (Doc. 135), this order had no practical effect on the speedy trial issue.

On October 5, 2006, defense counsel William Daniel moved to withdraw (Doc. 140) and the motion was granted on the next day. (Doc. 141.) On October 17, 2006, James Piazza was appointed as defense counsel and he filed an appearance on October 19, 2006. (Doc. 143.)

On November 17, 2006, the court docket indicates that excludable delay was stopped, but then started again on the same day based on "pending motion of co-defendant Casas." The only motions filed by co-defendant Casas, according to the docket, were three motions filed on February 7, 2006: a motion for a bill of particulars (Doc. 101), a motion to sever with codefendant Montgomery (Doc. 102), and a motion to dismiss based upon governmental entrapment. (Doc. 103.) A hearing was held on these three motions on April 11, 2006. The motions were denied on

April 12, 2006. (Doc. 110.) Consequently, the time period from the filing of the motions to the hearing was excludable, i.e., February 7, 2006, through April 11, 2006. *Gardner*, 488 F.3d at 717. In addition, the day the decision was rendered, April 12, 2006, was also excludable. *Tinklenberg*, 579 F.3d at 594.

An order entered on November 21, 2006, found that "Defendant also has criminal charges pending in case number 06-20544" and that "[t]he Government anticipates filing a motion to have these cases consolidated or combined in some manner. Since it appears that the actions alleged in case 06-20544 occurred while the Defendant was awaiting trial in this case, the two cases are related." (Doc. 146 at 1.) The court then ordered the time period from October 18, 2006, to January 8, 2007, be excluded "so that the newly-filed case may be prepared for trial." (Doc. 146 at 2.)

On December 20, 2006, the government filed a motion for joint trial as to Montgomery (Doc. 148), and a response by Montgomery was filed on January 12, 2007. (Doc. 150.) A hearing was held on this motion on January 17, 2007, and the order granting the motion to consolidate cases was entered on January 17, 2007. (Doc. 159; Case no. 06-20544 at Doc. 17.) Therefore, the time period from December 20, 2006, through January 17, 2007, was excludable. *Gardner*, 488 F.3d at 717.

Montgomery filed several defense motions on January 12, 2007.[12] Responses by the government were filed on January 26, 2007. (Docs 161-68.) A hearing was held on the motion for bond (Doc. 153) on February 6, 2007, and the motion was denied on February 7, 2007. (Doc.172.) Therefore, the time period from January 12, 2007, through February 7, 2007, was excludable. *Gardner*, 488 F.3d at 717. On April 10, 2007, a hearing was held on the other motions that had

---

[12]Specifically, a motion for pre-trial hearing on admissibility of co-conspirators statements (Doc. 152), motion for bond (Doc. 153), motion for discovery (Doc. 154), motion to dismiss indictment (Count I) (Doc. 155), motion in limine (Doc. 156), and motion for bill of particulars. (Doc. 157.)

been filed on January 12, 2007, and the motions were decided on September 25, 2007. (Doc. 187.) Therefore, the time period from January 12, 2007, through April 10, 2007, and the individual date of September 25, 2007, were excludable. *Gardner*, 488 F.3d at 717.

On April 4, 2007, a scheduling order rescheduled Montgomery's trial for June 5, 2007. (Doc. 173.) On June 7, 2007, a stipulation and order was entered, resetting the jury trial for September 25, 2007, and finding that "the requested adjournment from June 11, 2007, to September 25, 2007, will afford defense counsel the reasonable time necessary for effective trial preparation and also provide continuity of counsel for both parties, consistent with 18 U.S.C. § 3161(h)(8)(B)(iv)." (Doc. 183 at 3.) Therefore, "the period from June 11, 2007, to September 25, 2007, is a period of excludable delay under 18 U.S.C. § 3161(h)(8) because the ends of justice served by the continuance outweigh the best interests of the defendant and the public at large." (*Id.*) Montgomery's trial began on September 25, 2007.

Presuming that the court's interest of justice findings are sufficient, applying the standards regarding excludable delay cited above,[13] I find the number of non-excludable days between indictment and trial to be 144 days.[14]

### iii.    Application and Analysis

Since Montgomery was not brought to trial within the seventy-day period, he has established a prima facie case. *Gardner*, 488 F.3d at 717. Therefore, if this issue were brought independently, rather than as a reason for alleging that counsel was ineffective for failing to raise

---

[13]Using all the aforementioned, the excluded dates are: November 17, 2005, through January 27, 2006; February 7, 2006, through April 11, 2006; April 12, 2006; June 6, 2006, through August 22, 2006; August 24, 2006, through October 5, 2006; October 18, 2006, through April 10, 2007; June 11, 2007, through September 25, 2007.

[14]From November 2005: 6 days; January 2006: 4 days; February 2006: 6 days; April 2006: 18 days; May 2006: 31 days; June 2006: 5 days; August 2006: 1 day; October 2006: 12 days; April 2007: 20 days; May 2007: 31 days; and June 2007: 10 days.

the issue, the government would bear the burden of showing that, "after taking into account all the time excludable from the seventy-day period, the defendant was brought to trial during the statutorily mandated period." *Id.* In the instant case, it appears the government would have difficulty making that showing.

However, since this issue arises in the context of ineffectiveness of counsel, the court must consider whether the case would have been dismissed with prejudice. *Jackson, supra.* If the case would have been dismissed with prejudice, the failure to raise the issue may have had an effect on the outcome of the proceedings. On the other hand, if the case would have been dismissed without prejudice such that defendant would have been retried at a later date, then the failure to raise the issue had no lasting effect on the outcome of the proceedings.

When considering whether a dismissal should be with or without prejudice, courts analyze the following factors: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a re-prosecution on the administration of this chapter and on the administration of justice. 18 U.S.C. § 3162(a).

The government argues that:

Montgomery has not shown that he made a timely assertion of any speedy trial claims before his trial began, nor that any delay in bringing his case to trial resulted in actual, demonstrable prejudice to him such that the results of his trial should not be deemed unreliable. Likewise, Montgomery has not shown that the government sought to delay his trial and thereby gained any advantage. On the contrary, Montgomery apparently makes his speedy trial claim without giving any consideration to the multiple changes of defense counsel, motions, and findings of excludable delay reflected in the dockets for his two consolidated cases.

(Doc. 296 at 6.) The government also attaches an affidavit from defense counsel wherein he states, "Defense Counsel did not see an issue relating to a speedy trial as Defense Counsel was not the first attorney on the case; also there were several pre-trial motions filed that would have delayed any counting towards a speedy trial." (Doc. 296 at Ex. 5.)

21

Applying the section 3162(a) factors listed above to the instant case, I find that the delays were largely the result of either a stipulation by the parties, time allotted to allow various new defense counsel to prepare for trial, delays due to motion practice or co-defendant delay. Since the offense is very serious, if the case had been dismissed without prejudice, re-prosecution would have been in the interest of the administration of justice. I therefore suggest that the factors weigh in favor of dismissal without prejudice, and since a dismissal without prejudice would not result in a different outcome of the proceedings, I suggest that Montgomery has not shown actual prejudice under *Strickland*. *See Campbell v. United States,* 364 F.3d 727, 730-31 (6th Cir. 2004) (no prejudice under *Strickland* shown where defendant's Speedy Trial Act rights were violated but where he was convicted of participating in a serious drug conspiracy, was sentenced to 30 years, delays were occasioned by complexity of case, and there was no evidence of bad faith on the part of the government that needs to be deterred).

I therefore suggest that even if a Speedy Trial Act violation occurred, Montgomery is not entitled to relief because he has not shown that counsel's failure to raise the issue at trial or on appeal caused him any actual prejudice.

**b.      Sixth Amendment Speedy Trial Right**

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. A four-factor test has been established to determine whether the constitutional right to a speedy trial has been violated:[15] (1) "whether delay before trial was uncommonly long"; (2) "whether the government or the criminal defendant is more to blame for that delay"; (3) "whether, in due course,

---

[15]This test is often referred to as the *Barker* test because it was enunciated in *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

the defendant asserted his right to a speedy trial"; and (4) "whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). "A delay [between indictment and trial] approaching one year is presumptively prejudicial." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citation omitted); *United States v. Sylvester*, 330 Fed. App'x 545, 549 (6th Cir. 2009). Length of delay under the first factor is a threshold factor, "[t]hat is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007).

Since the delay in the instant case was approximately two years, Montgomery has satisfied the threshold factor and has shown presumptive prejudice. However, in the Sixth Circuit, the "presumption of prejudice" does not obviate the requirement under the fourth factor to show that actual prejudice exists, i.e., existence of the presumption does not relieve the defendant from proving actual prejudice nor does it even shift the burden to prove actual prejudice as it does in other circuits. *See, e.g., United States v. Bishop*, 629 F.3d 462, 465-66 (5th Cir. 2010) (the court first "'determines whether the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is presumed'; . . . [i]f the first three factors do not justify a presumption of prejudice, 'then the defendant bears the burden of establishing actual prejudice'"). Instead, in the Sixth Circuit, even where the delay is lengthy and "presumptively prejudicial," if the delay is not attributable to acts taken in bad faith on the part of the government, a defendant must also show actual prejudice to his defense in order to satisfy the fourth factor. *See United States v. Brown*, 169 F.3d 344, 349-50 (6th Cir. 1999) (five-year delay); *Robinson*; *Sylvester*. As indicated above, delays in this case were largely the result of either a stipulation by the parties, time allotted to allow various new defense counsels to prepare for trial, delays due to motion practice, or co-defendant

23

delay. Since I can find neither an allegation nor evidence of bad faith on the part of the government, I next turn to the actual prejudice analysis.

"'Actual prejudice is determined by examining whether the defendant has suffered (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) impairment to his defense.'" *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (quoting *Brown*, 169 F.3d at 350). Since "all involuntary detention will undoubtedly engender some amount of anxiety," the second factor requires some extraordinary showing to be significant. *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998).

I suggest that Montgomery did not suffer oppressive pretrial incarceration. He has not alleged anxiety or concern beyond that suffered by all who are involuntarily detained, nor has he alleged that his defense was impaired in any way. I therefore suggest that Montgomery has not shown that his Sixth Amendment right to a speedy trial was violated. Accordingly, I further suggest that his counsel, both trial and appellate, could not have been ineffective for failing to raise the issue. *See United States v. Williams*, 231 Fed. App'x 457, 462-69 (6th Cir. 2007) (17-month delay between indictment and trial was presumptively prejudicial but delay was merely negligent and not due to bad faith, defendant sought and received new counsel on the eve of the scheduled trial date and stipulated to adjournments); *accord, United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007) ("neither a ten- nor a twenty-month delay is extraordinary under our precedents, and given the lack of evidence of actual prejudice to Jackson or bad faith on the part of the government, the district court reasonably concluded that Jackson has not established a speedy-trial violation" under the Sixth Amendment); *United States v. Bass*, 460 F.3d 830 (6th Cir. 2006) (five-year period between arraignment and trial was presumptively prejudicial and Bass filed three motions to dismiss based on speedy trial grounds but other factors weighed in favor of government,

24

such as complex large-scale drug conspiracy with seventeen original codefendants, an interlocutory appeal, government did not act in bad faith, and Bass could not show any actual prejudice or that his defense was impaired in any way.)

### 6.    Use of Prior Convictions (Grounds 8 and 10)

Montgomery was sentenced to a mandatory term of life imprisonment without release under 21 U.S.C. § 841(b)(1)(A) due to his prior controlled substance convictions. Montgomery argues that his trial counsel was ineffective for "failing to object to the failure of my prior convictions being Noticed in my indictment," for failure to object to the court failing to follow the appropriate procedure of § 851(b), and for "failing to object to the § 851(a) information . . . because the prior convictions the government was relying upon became final before I allegedly joined the conspiracy nor were they part of the conspiracy" and because "the statute of limitations had ran on the prior conviction of April of 1993." (Doc. 288 at 37, 40.)

I suggest first that the proper procedure under section 851 was followed. On October 24, 2005, a Notice of Penalty Enhancement was filed pursuant to 21 U.S.C. § 851 based on Montgomery's previous convictions of felony drug offenses, i.e., a May 10, 1993, conviction for delivery of narcotics, an October 20, 1994, conviction for possession of narcotics, and a June 3, 1998, conviction for possession of narcotics, all in Saginaw County, Michigan. (Doc. 78.)

Second, I suggest that Montgomery confuses sentence enhancement based on prior convictions with current criminal charges. His prior convictions were not alleged to have been committed in furtherance of the charged conspiracy; they were relevant to and used only for purposes of sentencing. In addition, the acts underlying the prior convictions are not being re-alleged as part of the conspiracy and therefore his statute of limitations argument is not germane. Montgomery's reliance on *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d

205 (2005), is misplaced because the Court in *Shepard* held that the inquiry to determine whether a plea of guilty (or conviction after trial) is appropriate for consideration under the Armed Career Criminal Act ("ACCA") is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. There is no allegation that the court strayed from any particular requirements stated in the *Shepard* case.

I therefore suggest that Montgomery's counsel was not ineffective for failing to raise these issues which lack merit and that the motion to vacate sentence be denied as to these grounds.

### 7.      Failure to Interview and Call Specific Witness (Ground 9)

Montgomery contends that trial counsel was ineffective for failing to follow his "express instructions to go and interview Mr. Crittendon and to call him as a witness because he would have refuted Mr. Casas' testimony and would have undermined the government's theory, and that is, that while I was incarcerated I had made arrangements for Bret Crittendon to supply Casas just as before." (Doc. 288 at 38.) Montgomery indicates that had counsel done so, he would have discovered that "Mr. Crittendon was locked up during the time that the government, through Mr. Casas, erroneously asserted that he was supplying Mr. Casas at my behest." (*Id.*) As evidenced by attachments to Montgomery's motion, Montgomery and defense counsel discussed the advantages and disadvantages of calling Mr. Crittendon. (Doc. 288 at 49, 50.) In addition, an affidavit of defense counsel provides that "during trial Mr. Crittendon's name came up and Defense Counsel and Defendant had talked about Mr. Crittendon. After discussing the matter between Defense Counsel and Defendant, it was agreed upon by both parties that Mr. Crittendon would not be called as he could have done more damage to Mr. Montgomery's case." (Doc. 296 at Ex. 5 ¶ 11.)

26

Montgomery cites to *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006), and *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004), which stand for the proposition that counsel has a duty to investigate potentially important witnesses. However, in the instant case, counsel did investigate, considered the efficacy of calling the witness, and determined that it would not be sound strategy to call the witness. I therefore suggest that counsel's actions satisfy the requirements of *Stewart* and *Clinkscale* and that this claim is also without merit.

### 8.    **New Crack Law** (Ground 12)

Lastly, Montgomery argues that he should be resentenced based on the Fair Sentencing Act of 2010, which amended 21 U.S.C. § 841(b)(1)(B)(iii). However, the Sixth Circuit has held that the Fair Sentencing Act does not apply retroactively. *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). Accordingly, I suggest that Montgomery is not entitled to relief based on this ground.

### 9.    **Evidentiary Hearing**

Although Montgomery requested an evidentiary hearing (Doc. 288 at 42), I suggest that no hearing is required because "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The "burden is on the petitioner who seeks an evidentiary hearing in proceedings under § 2255 to establish his entitlement to such a hearing by showing the existence of a factual dispute." *Cope v. United States*, 272 Fed. App'x 445, 451 (6th Cir. 2008). Montgomery alleges that he "know[s] the government will accost Mr. Piazza and convince him to sign an affidavit in contrast to the above ineffectiveness claims" because "[m]ost public defenders will prepare and sign an affidavit, taylored [sic] to please and to curry favor with the government, which is in violation with the Constitution and the Oat [sic] they/he took before the Bar." (Doc. 288 at 42.) However, I suggest that Montgomery's allegations are

27

contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact, none of which require resolution by evidentiary hearing. *See Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

### E.   Conclusion

Accordingly, I suggest that Montgomery has not alleged any claims that could support a finding that his trial counsel was ineffective, that he was prejudiced by any alleged ineffectiveness, or that the district court proceedings were fundamentally unfair or unreliable. *Lockhart, supra*. Accordingly, I suggest that Montgomery's section 2255 motion be denied.

### III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2).  See also 28 U.S.C. § 636(b)(1).  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve

all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d

at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.


s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER

Dated: June 14, 2011                    United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on all attorneys of record via the Court's CM/ECF system and served on the following non-ECF participant via the United States Postal Service: Edres Montgomery, U.S.P. McCreary, P.O. Box 3000, Pine Knot, KY 42635.

Date:  June 14, 2011                    By   *s/Patricia T. Morris*
                                        Law Clerk to Magistrate Judge Binder