UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                               Case No. 1:04-cr-20046-6

v.                                             Honorable Thomas L. Ludington
                                                   United States District Judge

EDRES MONTGOMERY,

        Defendant.

_____/

**OPINION**

This matter is before this Court following the Sixth Circuit's reversal and remand of Defendant Edres Montgomery's ("Defendant") resentencing. *See United States v. Montgomery*, No. 04-20046-06, 2020 WL 736219 (E.D. Mich. Feb. 13, 2020), *vacated and remanded*, 998 F.3d 693 (6th Cir. 2021); ECF Nos. 347; 348; 355; 364. For the reasons explained hereafter, the Probation Department has recalculated Defendant's Guidelines range using the United States Sentencing Guidelines ("Guidelines") as they existed at his February 13, 2020 resentencing. ECF No. 373 at PageID.2266 (Amended Presentence Investigation Report) (filed under seal).

**I.**

This case has received periodic attention for over 16 years.[1] *Compare* ECF No. 74 (Second Superseding Indictment, October 2005), *with* ECF No. 368 (Order for Full Presentence Report, August 2021). In October 2007, a jury found Defendant guilty of, *inter alia*,[2] one count of

---

[1] The following history is parsed as relevant to this Order. For a much more detailed history of this case, see ECF No. 368 (Order for Full Presentence Report and Scheduling Defendant's Re-sentence Date).
[2] In case number 1:06-cr-20544, the jury also found Defendant guilty of two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(1). ECF No. 190. For each of those counts,

conspiracy to distribute five kilograms or more of cocaine or 50 grams or more of cocaine base ("crack") in violation of 21 U.S.C. § 841(b)(1)(A) ("Count 1"), and one count of distribution of five grams or more of crack in violation of 21 U.S.C. § 841(a)(1) ("Count 8"). ECF No. 190.

In March 2008, Defendant was sentenced to life imprisonment on Count 1 and to 360 months' imprisonment on Count 8, to run concurrently. ECF No. 238. On appeal, the Sixth Circuit affirmed the Judgment, and the Supreme Court later denied Defendant's petition for a writ of certiorari. *See United States v. Montgomery*, 358 F. App'x 622 (6th Cir. 2009), *cert. denied*, 559 U.S. 1081 (2010).

On December 21, 2018, the First Step Act of 2018 ("1SA") was signed into law.[3] The 1SA was intended, in relevant part, to rectify sentencing penalties that disparately affected people convicted of crack and powder cocaine offenses. *See United States v. Boulding*, 960 F.3d 774, 782 (6th Cir. 2020). To that end, the 1SA made certain provisions of the nonretroactive Fair Sentencing Act of 2010 ("FSA")[4] apply retroactively to people, like Defendant, who were first sentenced before August 3, 2010.[5]

In January 2019, Defendant filed a 1SA motion *pro se* to reduce his sentence.[6] *See* ECF No. 337. The Government opposed Defendant's Motion. ECF No. 343.

---

Defendant was sentenced to 120 months' imprisonment, to run concurrently to all custody terms. ECF No. 238 at PageID.859.

[3] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[4] Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010).

[5] Defendant was first sentenced in March 2008. *See* ECF No. 238.

[6] Defendant purported to file his Motion under 18 U.S.C. § 3582(c)(2). *See* ECF No. 337 at PageID.2106. Although § 3582(c)(2) is the appropriate vehicle for a reduction based on a retroactive amendment to the Guidelines, no such amendment exists in this case. Thus, Defendant likely meant to file his motion under "[s]ection 3582(c)(1)(B)[,] [which] serves as the vehicle for a proceeding under § 404 of the First Step Act." *United States v. Allen*, 956 F.3d 355, 356 (6th Cir. 2020); *accord United States v. Bonds*, 858 F. App'x 873 (6th Cir. 2021); *United States v. Wirsing*, 943 F.3d 175, 183-85 (4th Cir. 2019), *as amended* (Nov. 21, 2019). Therefore, in the interests of

In February 2020, this Court exercised its discretion under the 1SA and granted Defendant's Motion in part, making two reductions in Mr. Montgomery's sentences. *See* ECF Nos. 346; 347. First, this Court reduced Defendant's Count 1 sentence from life to 275 months. *See* ECF No. 346 at PageID.2181. His Count 1 conviction for 50 grams or more of crack fell under 21 U.S.C. § 841(b)(1)(A), requiring life imprisonment. *Id.* at PageID.2176. But the FSA moved 50 grams of crack to § 841(b)(1)(B), requiring at least 120 months' imprisonment and eight years' supervised release. *Id.* Second, this Court reduced Defendant's Count 8 sentence from 360 months to 145 months. *Id.* at PageID.2181. His Count 8 conviction for distribution of five grams or more of crack fell under 21 U.S.C. § 841(b)(1)(B), requiring at least 120 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B) (2009). But the FSA moved five grams of crack to 21 U.S.C. § 841(b)(1)(C), imposing a maximum of thirty years' imprisonment with six years' supervised release. ECF No. 346 at PageID.2179–80. Thus, this Court reduced Defendant's total sentence from life to 35 years' imprisonment.

Defendant appealed, arguing that "the district court applied the wrong Criminal History Category, placing [him] in a higher Sentencing Guidelines range." *United States v. Montgomery*, 998 F.3d 693, 696 (6th Cir. 2021). He contended that was so because, at his first sentencing, he received "one extra criminal history point for committing the offense for which he was being sentenced within two years of release from prison." *Id.* at 700. The United States Sentencing Commission ("Commission") eliminated the recency penalty in 2010. *Id.* The effect, according to Defendant, was to overstate his criminal history as Category VI instead of Category V. *Id.*

---

fairness and justice, this Court construed Defendant's Motion as if properly filed under § 3582(c)(1)(B).

The *Montgomery* court agreed, finding that Defendant and the Government both invited Defendant's failure to raise the Guidelines amendment in the district court because they "uncritically assumed that his Criminal History Category had not changed since his first sentencing." *Id.* at 699. In addition, the *Montgomery* court found the error to be plain and has, thus, remanded the case for resentencing, concluding that it would be "difficult to see how the interests of justice would be served by requiring Montgomery to linger longer in prison because no one in the district court, the court itself included, noticed that the way we calculate a defendant's Criminal History Category had changed between his two sentencings." *Id.* at 700.

## II.

At the Sixth Circuit's direction, this Court directed the Probation Officer to update Defendant's Presentence Investigation Report ("PSR") to recalculate Defendant's Guidelines range using the Guidelines as they existed at Defendant's resentencing, which it did. *See id.* at 701; ECF Nos. 355; 368; 373 (filed under seal). His resentencing is scheduled for 3:30 PM EST on November 9, 2021. ECF No. 368.

The *Montgomery* court invested significant effort to clarify the continuum regarding "the difference between waiver, invited error, and forfeiture." *See generally Montgomery*, 998 F.3d at 693–701. But, respectfully, in its five-paragraph discussion related to the 1SA, the *Montgomery* court did not address the Sixth Circuit's foray into a nationwide circuit split some 66 days earlier. *See id.* at 696–97, 700–01; *see also United States v. Maxwell*, 991 F.3d 685 (6th Cir. 2021).

The split concerns whether the 1SA requires district courts to pair the FSA's modifications ("FSA modifications") with the Guidelines either as they existed at the defendant's original sentencing or as they exist at the defendant's resentencing. Before addressing the merits of Defendant's resentencing, a discussion of that issue is necessary.

### III.

In 1984, Congress made the Guidelines mandatory and binding on all judges. *See Mistretta v. United States*, 488 U.S. 361, 391 (1989). Therefore, judges were required to sentence within the Guidelines range calculated at sentencing. But in *United States v. Booker*, the Supreme Court severed that provision and held that Guidelines ranges are advisory: one of eight factors that judges must consider. *See* 543 U.S. 220, 245 (2005).

On November 1, 2010, the Commission enacted Amendment 742 into the Guidelines.[7] Amendment 742 eliminated § 4A1.1(e),[8] which called for additional criminal-history points depending on the "recency" of a defendant's past sentences. *See United States v. Davy*, 433 F. App'x 343, 346 n.2 (6th Cir. 2011) (noting the change). *Compare* U.S. SENT'G GUIDELINES MANUAL § 4A1.1(e) (U.S. SENT'G COMM'N 2009), *with id.* (U.S. SENT'G COMM'N 2018).

The Commission "studied and considered whether to make Amendment 742 retroactive, but it ultimately decided against retroactivity." *United States v. Koski*, No. 4:08CR3148, 2011 WL 1400004, at *1 (D. Neb. Apr. 12, 2011), *aff'd on other grounds*, 409 F. App'x 971 (8th Cir. 2011). In September 2010, the Commission issued a memorandum that compared "the estimated impact of the Recency Amendment" between offenders sentenced before and after the FSA.[9] In sum, the Commission found that, if retroactive, Amendment 742 would (1) "have no effect" on more than

---

[7] U.S. SENT'G GUIDELINES MANUAL app. C, amend. 742 (U.S. SENT'G COMM'N 2010) (eliminating "recency" points from the criminal history scoring). The Commission added Amendment 742 because data indicated that cases using recency points were "frequent[ly] below-guideline sentences." Amy Baron-Evans & Kate Stitch, *Booker Rules*, 160 U. PA. L. REV. 1631, 1674 n.243 (2012).

[8] Section 4A1.1(e) added one or two points to the criminal-history score if the defendant committed the instant offense less than two years after release from at least 60 days' imprisonment.

[9] *See* U.S. SENT'G COMM'N, ANALYSIS OF THE IMPACT OF AMENDMENT TO SECTION 4A1.1 OF THE SENTENCING GUIDELINES IF THE AMENDMENT WERE APPLIED RETROACTIVELY 5 (2010).

65% of offenders;[10] (2) benefit African-American offenders less than others;[11] and (3) benefit "drug trafficking and firearms offenders" more than others.[12]

In *Dillon v. United States*, the Supreme Court held that such "retroactivity determinations . . . are [indisputably] binding." 130 S. Ct. 2683, 2693 (2010).

Indeed, courts have consistently held that Amendment 742 is not retroactive because the Commission specifically determined it is not. *E.g.*, *Corrado v. United States*, No. 08-CR-2018-L-1, 2011 U.S. Dist. LEXIS 90071, at *2 (S.D. Cal. Aug. 12, 2011) (holding Amendment 742 is not retroactive for challenges brought under § 3582(c)(2)); *United States v. Wayne*, 516 F. App'x. 135, 137 (3d Cir. 2013) (holding that because "Amendment 742 was not made retroactive," it could not piggyback on Amendment 750's retroactivity); *United States v. Johnson*, 703 F.3d 464, 467–68, 469–71 (8th Cir. 2013) (upholding Amendment 742's nonretroactivity under both the APA and the Due Process Clause of the Fifth Amendment).

The Sixth Circuit has also cosigned Amendment 742's nonretroactivity. In *United States v. Bonds*, the Sixth Circuit held "as a matter of first impression" that applying a retroactive amendment does not give courts "the authority to consider the non-retroactive Amendment 742 in determining eligibility for a § 3582(c)(2) reduction." 839 F.3d 524, 526 (6th Cir. 2016).

Therefore, Amendment 742 applies only to defendants sentenced after August 3, 2010. *Accord* ECF No. 238 (sentencing Defendant without Amendment 742 on March 25, 2008).

### IV.

### A.

---

[10] *See id.* at 7.
[11] *See id.* at 12.
[12] *See id.* at 5 n.15; *see also id.* at 13.

Enter the First Step Act of 2018 ("1SA").[13] In relevant part, the 1SA gives federal courts discretion to reduce sentences resulting from pre-FSA violations of 21 U.S.C. §§ 841(b)(1)(A) and (B) as if the FSA modifications applied.[14] *Id.*; 18 U.S.C. § 3582(c); *see also Terry v. United States*, 141 S. Ct. 1858 (2021) (holding that the 1SA does not authorize federal courts to resentence pre-FSA violations of 21 U.S.C. § 841(b)(1)(C)).

Applicable here, § 404 of the 1SA concerns the "application of [the FSA]." First Step Act of 2018, § 404(b), Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). Section 404 provides:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

The elephant in the room, then, is the question of whether district courts resentencing under the 1SA should recalculate the Guidelines range using the Guidelines either as they existed at the original sentencing or as they exist at the resentencing.

---

[13] First Step Act of 2018, § 404(b), Pub. L. No. 115-391, 132 Stat. 5194, 5194–249 (2018).
[14] The 1SA gives the same discretion to modify sentence post-FSA violations of 21 U.S.C. §§ 960(b) and 844(a). *See id.*

- 7 -

**B.**

The first published case to address that issue was *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019). In *Hegwood*, the Fifth Circuit reasoned that the 1SA "does not allow plenary resentencing." 934 F.3d at 415. As Defendant did in this case, Hegwood filed a 1SA motion to reduce the pre-FSA sentence he received after pleading guilty to violating 21 U.S.C. § 841(b)(1)(B). *Id.* at 415–16. Contrary to Hegwood's position, the district court applied the FSA modifications to the Guidelines as they existed at his original sentencing. *See id.* at 416.

On appeal, Hegwood argued that the 1SA required the district court to recalculate his Guidelines range using the Guidelines as they existed at resentencing, because "[s]ection 404(b) of the [1SA] requires the district court to 'impose' a reduced sentence, rather than to 'modify' one." *Id.* at 417. Because Congress used the word "impose" as it did in § 3582(a),[15] the court must consider the § 3553(a) factors, which include the Guidelines. *Id.* In contrast, § 3582(c) uses the word "modify," which "does not constitute a full resentencing of the defendant." *Id.* Thus, Hegwood concluded, "the [1SA] requires a Guideline calculation to be made that is correct as of the time of the new sentencing." *Id.* at 417–18.

The Fifth Circuit affirmed the district court, holding that the 1SA allows district courts to "reduc[e] a sentence previously imposed." *Id.* at 418. Thus, the earlier Guidelines range should be "adjusted 'as if' the lower drug offense sentences were in effect" when the defendant committed the offense. *Id.* Applying the interpretive canon *expressio unius*, the Fifth Circuit reasoned that "Congress did not intend that other changes were to be made as if they were too in effect at the

---

[15] Section 3582(a) is titled "Factors To Be Considered in Imposing a Term of Imprisonment" and requires sentencing courts to "consider the factors set forth in section 3553(a)" and "any pertinent policy statements issued by the Sentencing Commission" when "a term of imprisonment is to be imposed." 18 U.S.C. § 3582(a).

time of the offense," because it expressly backdated only §§ 2 and 3 of the FSA. *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 28–29 (2001)). Based on similar expressions in § 3582(c)(2), "Congress intended to authorize only a limited adjustment to an otherwise final sentence and *not a plenary resentencing*." *Id.* (emphasis added) (quoting *Dillon v. United States*, 560 U.S. 817, 826 (2010)). Therefore, district courts should resentence "as if all the conditions for the original sentencing were again in place with one exception": the FSA modifications. *Id.* at 418–19.

In *United States v. Berry*, the Western District of Michigan considered a 1SA motion for a sentence reduction. No. 1:09-CR-05-2, 2019 WL 2521296 (W.D. Mich. June 19, 2019). Consistent with *Hegwood*, the *Berry* court reasoned that "the [1SA] does not provide for a plenary-resentencing," because it "does not impose any artificial or guideline limits on a reviewing court." *Id.* at *4 (citations omitted). Although the Commission is the engine propelling § 3582(c)(2), the Commission has "nothing to do with" the 1SA. *Id.* (citation omitted). Therefore, the *Berry* court concluded, courts reducing sentences under the 1SA are *not required* to consider the Guidelines as they exist at resentencing, but they *may consider* such a recalculation, as the *Berry* court did. *Id.* at *4–5. But that discretion, the *Berry* court elaborated, does not allow district courts to retroactively apply nonretroactive Amendment 742. *Id.* at *4 n.5 (citing *United States v. Bonds*, 839 F.3d 524, 528 (6th Cir. 2016)).[16]

Notably, in *United States v. Allen*, the Sixth Circuit agreed with *Berry* that the 1SA imposes no limits on what district courts may consider. 956 F.3d 355, 357 (6th Cir. 2020) ("Section 404's silence regarding the standard that courts should use in determining whether to reduce a defendant's sentence cannot be read to limit the information that courts may consider.").

---

[16] The Fourth Circuit also refused to eliminate "recency" points based on the same rationale. *United States v. Brooks*, 788 F. App'x 213, 213–14 (4th Cir. 2019) ("U.S.S.G. § 1B1.10 provides that only some Guideline Amendments are retroactive, and Amendment 742 is not one of them.").

Furthermore, the *Allen* court agreed with *Hegwood* that the 1SA does not require district courts to conduct plenary resentencing. *Id.* at 358 ("[T]he First Step Act § 404 in contrast only granted courts the power to modify sentences." (citing *United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019))).

Nine days after *Allen*, the Fourth Circuit decided *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020). In *Chambers*, the Fourth Circuit considered whether a district court's erroneous decision not to apply intervening retroactive case law when resentencing the defendant in a 1SA proceeding warranted reversal. *See id.* at 668. Distinguishing *Hegwood*, the Fourth Circuit reversed the district court because "any Guidelines error deemed retroactive . . . must be corrected in a [1SA] resentencing," thus requiring the court to "recalculate the Guidelines range." *Id.* at 668, 672 (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)). But the *Chambers* court sidestepped "the question of which manual applies in [FSA] cases," because its holding would not have changed either way. *See id.* at 670 n.1.

Thus, after *Allen* and *Chambers*, the question remained: Which Guidelines must resentencing courts apply?

## C.

In requiring this Court to resentence Defendant "under the Guidelines as they existed at the time of resentencing," the *Montgomery* court relied on *United States v. Boulding*, 960 F.3d 774, 777 (6th Cir. 2020). *See United States v. Montgomery*, 998 F.3d 693, 697, 700–01 (6th Cir. 2021). Respectfully, this Court does not read *Boulding* to require courts resentencing under the 1SA to apply the Guidelines as they exist at the time of resentencing.

In *Boulding*, the Sixth Circuit addressed whether courts must allow defendants to present objections to a resentencing conducted upon a 1SA motion for reduction. 960 F.3d 774 (6th Cir.

2020). The *Boulding* court held in the affirmative[17] but repeatedly agreed with *Hegwood*, *Berry*, and *Allen* that eligible "[d]efendants seeking a reduced sentence under the [1SA] are not entitled to plenary resentencing." *Id.* at 774, 775, 782, 783, 784. The *Boulding* court elaborated that "district courts are empowered to provide process and to consider resentencing factors *as they see fit*," because the 1SA "imposes *no additional constraints* on the district court's discretion" after recalculating the defendant's Guidelines range with the FSA modifications. *Id.* at 783 (emphases added).

Thus, even though the district court paired the FSA modifications with the Guidelines as they existed at resentencing,[18] *Boulding*, like *Chambers*, did not implicate which Guidelines resentencing courts must use. Indeed, the *Boulding* court concluded that the district court "correctly" invoked its "wide discretion" when it compared the Guidelines calculation "at the original sentencing with the amended guideline range as it existed at resentencing." *See id.* at 784.

The *Montgomery* court's interpretation of *Boulding* likely stems from the passage where the *Boulding* court stated that "the necessary [1SA] review—at a minimum—includes an accurate calculation of the amended guidelines range at the time of resentencing."[19] *Boulding*, 960 F.3d at 784. The *Montgomery* court appears to have understood that passage to provide that the "amended guidelines range" must be *recalculated* using the Guidelines as they existed "at the time of

---

[17] The *Boulding* court concluded that "an opportunity to present objections . . . is part and parcel of the process due to an eligible defendant." *Id.* at 784.
[18] *See United States v. Boulding*, 379 F. Supp. 3d 646, 654–56 (W.D. Mich. 2019) (applying "the guidelines as they exist now"), *aff'd in part, vacated in part, remanded*, 960 F.3d 774 (6th Cir. 2020).
[19] Although the *Montgomery* court did not elaborate on its interpretation of *Boulding*, the cited passage is the only relevant one on the page that the *Montgomery* court cited. *See Montgomery*, 998 F.3d at 697 ("[T]he district court had to re-calculate Montgomery's Guidelines range to ensure that it sentenced him under the Guidelines as they existed at the time of resentencing." (citing *Boulding*, 960 F.3d at 784)).

resentencing." *Id.* But in context, that passage means only that the district court must have *reviewed* an accurate amended Guidelines range "at the *time* of resentencing." *See id.* at 784 (emphasis added). Thus, anything beyond that is within the district court's discretion, including whether to consider a recalculated Guidelines range that applies the Guidelines as they exist at resentencing.

Indeed, the Tenth Circuit's interpretation of *Boulding* contradicts the *Montgomery* court's interpretation. *See United States v. Brown*, 974 F.3d 1137, 1139–40, 1142, 1144 (10th Cir. 2020) (holding that the 1SA "does not authorize plenary resentencing" but "may authorize a broader resentencing" (citing *Boulding*, 960 F.3d at 776)).

Similarly, the First, Second, Eighth, and Ninth Circuits have interpreted the 1SA not to require district courts to use the Guidelines as they exist at resentencing. *See United States v. Concepcion*, 991 F.3d 279, 279, 286 (1st Cir. 2021) (holding that district courts need not "recalculate defendant's Guidelines Sentencing Range (GSR) under current Sentencing Guidelines"), *cert. granted sub nom. Concepcion v. United States*, No. 20-1650, 2021 WL 4464217 (U.S. Sept. 30, 2021); *United States v. Moore*, 975 F.3d 84, 92 (2d Cir. 2020) ("We therefore hold that the [1SA] does not entail a plenary resentencing, and that it does not obligate a district court to recalculate an eligible defendant's Guidelines range, except for those changes that flow from Sections 2 and 3 of the [FSA] . . . ."); *United States v. Brewer*, 836 F. App'x 468, 468-69 (8th Cir. 2021) (per curiam) (holding that under the 1SA, defendants are "not entitled to a plenary resentencing hearing"); *United States v. Kelley*, 962 F.3d 470, 475 (9th Cir. 2020), *cert. denied*, No. 20-7474, 2021 WL 2637994 (U.S. June 28, 2021) ("[A] district court that decides to exercise its discretion under the [1SA] must: (1) place itself in the counterfactual situation where

all the applicable laws that existed at the time the covered offense was committed are in place, making only the changes required by sections 2 and 3 of the Fair Sentencing Act . . . .").[20]

## V.

On March 19, 2021, the Sixth Circuit directly addressed the circuit split over which Guidelines courts should apply when considering a 1SA motion for reduction. In *United States v. Maxwell*, the Sixth Circuit addressed two distinct questions: (1) Does the 1SA require plenary resentencing "that accounts for all changes in the law since [the] original sentence?"; and (2) Does the 1SA require judges to "consider intervening legal developments, such as changes in the . . . guidelines?" 991 F.3d 685 (6th Cir. 2021). The *Maxwell* court unequivocally answered both "No."

Maxwell filed a 1SA motion to reduce the pre-FSA sentence he received after a jury found him guilty of "conspiring to distribute crack cocaine and heroin." *Id.* at 687. The district court denied Maxwell's motion. *Id.* at 688.

On appeal, Maxwell sought the same result as Defendant in this case: he argued that the 1SA required the district court to "recalculate[] the guideline range according to the law at the time of the request." *Id.* at 689. For Maxwell, "that new calculation would have accounted for subsequent changes in other areas of the law since [his pre-1SA] sentencing," thus requiring the district court to change his career-offender status. *Id.*

According to the *Maxwell* court, the 1SA "tells the court to alter just one variable in the original sentence, not all variables." *Id.* at 689. That is, the 1SA "asks the court to sentence [the defendant] 'as if' [the FSA modifications applied], not as if other changes had been made to sentencing law in the intervening years." *Id.* Citing the Second, Fifth, Eleventh, and Ninth Circuits,

---

[20] Notably, though, the *Concepcion* and *Moore* courts have, like the *Montgomery* court, interpreted *Boulding* as requiring district courts to pair the FSA modifications with the Guidelines as they exist at resentencing. *See Concepcion*, 991 F.3d at 285; *Moore*, 975 F.3d at 90 n.30.

the Sixth Circuit confirmed that "the district court looks to the law as it existed at the time the defendant committed the offense, save for one change: the [FSA]'s amendments." *Id.* To that end, the *Maxwell* court unequivocally concluded that *Boulding* should be read as only requiring courts to apply the FSA modifications at resentencing. *See Maxwell*, 991 F.3d at 690–91 ("*Boulding* . . . . no doubt speaks to a court's discretion to consider intervening legal developments when responding to a petition under the [1SA] . . . . But it does not require a plenary resentencing.").

The *Maxwell* court concluded, in the most comprehensive analysis of the issue to date, that the 1SA cases "do not require district courts to conduct plenary resentencing hearings in response to a petition under the [1SA]"; on the contrary, they give courts *discretion* "to consider subsequent developments in deciding whether to modify the original sentence and, if so, in deciding by how much." *Id.* at 691 (Sutton, C.J.). To wit:

> All told, our decisions and most of our sister circuits permit defendants to raise these intervening developments, such as changes to the career-offender guidelines, as grounds for reducing a sentence, and they *permit (but do not require)* district courts to consider these developments in balancing the § 3553(a) factors and in deciding whether to modify the original sentence.

*Id.* at 692 (emphasis added). Thus, "[t]he key impact is that a court, in addressing these arguments by a defendant, *has discretion* not to recalculate the guidelines to account for intervening legal developments." *Id.* (emphasis added).

To be clear, in the Sixth Circuit, a district court that resentences a defendant under the 1SA *must* recalculate the defendant's Guidelines range using the FSA modifications, *but* the district court *may* choose to pair the FSA modifications with the Guidelines either as they existed at the original sentencing or as they exist at the resentencing.[21] *Id.*

---

[21] *Maxwell* technically says that courts may consider intervening legal developments, as represented in the current Guidelines, when balancing the § 3553(a) factors. Although the functional result is the same as stated above, this is an analytical difference worth clarifying.

## VI.

Enter Mr. Edres Montgomery's second appeal to the Sixth Circuit. *United States v. Montgomery*, 998 F.3d 693 (6th Cir. 2021). *Montgomery* is factually identical to *Maxwell*.

Like the *Maxwell* defendant, Montgomery argued that the 1SA required this Court to recalculate his Guidelines range using the Guidelines as they existed at his resentencing, thereby requiring retroactive application of nonretroactive Amendment 742. *See United States v. Montgomery*, 998 F.3d 693, 700 (6th Cir. 2021). Instead, this Court applied the FSA modifications to the Guidelines as they existed at Montgomery's original sentencing. Doing so was consistent with precedent from the First, Second, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits—and the Sixth Circuit in *Maxwell*.

The *Montgomery* court went to a significant effort to clarify "the difference between waiver, invited error, and forfeiture." *See generally Montgomery*, 998 F.3d at 693–701. That discussion is undoubtedly sound. But the *Montgomery* court's interpretation of *Boulding* diametrically opposes the *Maxwell* court's interpretation. *Compare Maxwell*, 991 F.3d at 689–90 (analyzing five circuits to conclude that "*Boulding* does not hold, or for that matter say, that district courts must engage in a plenary reduction of the guidelines range at the outset, requiring the court to redetermine the guidelines range based on all intervening legal development, not just passage of the Fair Sentencing Act"), *with Montgomery*, 998 F.3d at 696–97, 700–01 (citing *Boulding* to hold that "the district court has to re-calculate Montgomery's Guidelines range to ensure that it sentenced him under the Guidelines as they existed at the time of resentencing").

Confusingly, the *Montgomery* court applied the reading of *Boulding* that the *Maxwell* court explicitly rejected 66 days earlier. And *Montgomery* does not even whisper of *Maxwell*.[22]

The Second, Eleventh, and Sixth Circuits have since read *Boulding* contrary to the *Montgomery* court's reading. In *United States v. Moyhernandez*, the Second Circuit reasoned that *Boulding* does not require district courts to apply the Guidelines as they exist at the time of resentencing. 5 F.4th 195, 203 (2d Cir. 2021). Likewise, 35 days after the Second Circuit rejected *Montgomery*'s reading of *Boulding*, the Eleventh Circuit rejected *Boulding* to hold that district courts do not have to conduct "a complete review of [initial motions] on the merits." *See United States v. Gonzalez*, 9 F.4th 1327 (11th Cir. 2021).

Indeed, the Sixth Circuit has since affirmed the *Bonds* court's pairing of the FSA modifications with the Guidelines as they existed at the time of the original sentencing. *See United States v. Bonds (Bonds II)*, 858 F. App'x 873 (6th Cir. 2021).

Most recently, the Sixth Circuit has relied on *Maxwell* thrice for the proposition that "the range is calculated 'as the law existed at the time of *the original offense*, accounting for the new variable created by the [FSA].'" *United States v. Moreno*, No. 20-2235, 2021 WL 4206277 (6th Cir. Sept. 16, 2021) (Guy, J.) (emphasis added) (citation omitted);[23] *see United States v. Osborne*, No. 20-5394, 2021 WL 3199233, at *2 (6th Cir. July 29, 2021) (Siler, J.) ("The [FSA] states that a district court 'may' grant a defendant a reduced sentence based on the [FSA]; it does not say that a court 'must' do so." (citing *United States v. Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021); and

---

[22] Similarly, 53 days before *Maxwell*, the Third Circuit relied on *Boulding* for the proposition that *Maxwell* explicitly rejected. *See United States v. Murphy*, 998 F.3d 549 (2012) ("[W]e again join the Sixth Circuit's conclusion . . . ."). Likewise, the *Murphy* court did not mention *Maxwell*. *See generally id.* Both cases are more likely due to limited access to *Maxwell* within the time to consider it rather than disagreement with *Maxwell*'s analysis and conclusion.
[23] The *Moreno* court likewise confirmed the district court's discretion to "consider subsequent developments." *Id.*

then citing *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020))); *United States v. Wilcox*, 858 F. App'x 853 (6th Cir. 2021) (Murphy, J.) (citing the same for the same proposition).

The Seventh and Eighth Circuits have also "join[ed] the Sixth Circuit's view that § 404 of the [FSA] authorizes but does not require a district court to apply intervening judicial decisions." *United States v. Fowowe*, 1 F.4th 522, 531–32 (7th Cir. 2021) (citing *Maxwell*, 991 F.3d at 692); *see also United States v. Shepard*, 8 F.4th 729, 733 (8th Cir. 2021) (holding the same) (citing *Maxwell*, 991 F.3d at 689–90).

The Supreme Court has since granted the *Concepcion* defendant's petition for a writ of certiorari, which was filed contemporaneously with the *Maxwell* defendant's docketed petition. *See Concepcion v. United States* (U.S. Sept. 30, 2021) (No. 20-1650). And the Solicitor General defends the *Maxwell* court's position. *See* Brief for the United States in Opposition at 18–19, *Maxwell v. United States* (U.S. May 27, 2021) (No. 20-1653) ("Section 404's requirement . . . does not either explicitly or by necessary implication direct courts to consider unrelated post-sentencing changes.").

V.

In the race between *Montgomery* and *Maxwell*, it appears the tortoise has won. Yet this Court must honor the hare. Indeed, "[e]fforts to rewrite the past are not easy." *Maxwell*, 991 F.3d at 689.

The *Montgomery* court has ordered this Court to resentence Mr. Montgomery by pairing the FSA modifications with the Guidelines as they existed at his resentencing. Accordingly, this Court must retroactively apply Amendment 742, notwithstanding the Commission's binding determination that Amendment 742 is not retroactive. *Dillon v. United States*, 130 S. Ct. 2683, 2693 (2010). That recalculation will also contrast with the Sixth Circuit's holdings in *Maxwell*,

*Bonds II*, *Moreno*, *Osborne*, and *Wilcox*. *See also United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) ("The text . . . does not permit us to treat the [FSA]'s non-retroactive amendments, whether by themselves or together with other factors, as 'extraordinary and compelling' explanations for a sentencing reduction.").

Therefore, Court will resentence Defendant by pairing the FSA modifications with the Guidelines as they existed at Defendant's resentencing, thus retroactively applying nonretroactive Amendment 742. *See United States v. Clinton*, 338 F.3d 483 (6th Cir. 2003) ("A published decision of the Court of Appeals is binding on subsequent panels unless an 'inconsistent decision of the United States Supreme Court requires modification of the decision or the Court sitting en banc overrules the prior decision.'" (quoting *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996))); *see also United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (same); *Hall v. Eichenlaub*, 559 F. Supp. 2d 777, 782 (E.D. Mich. 2008) ("In the absence of Supreme Court precedent directly on point, a district court should decline to 'underrule' established circuit court precedent." (citing *Johnson v. Detroit*, 319 F. Supp. 2d 756, 771, n.8 (E.D. Mich. 2004))); *Cochran v. Trans-General Life Ins. Co.*, 60 F.Supp.2d 693, 698 (E.D. Mich. 1999) (holding that district courts are bound by the decisions of the Sixth Circuit Court of Appeals).

Dated: October 8, 2021      s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge